IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CAREY D. EBERT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:15-cv-00225-O |
| § | |
| MICHAEL GUSTIN et al., § | |
| § | |
| Defendants. § | |
| § | |

## ORDER

Before the Court are Helen Klebanoff's Second Motion to Dismiss Under FRCP 12(b)(6) for Failure to State a Claim and Cause of Action and Brief in Support (ECF Nos. 53–54), filed January 11, 2016; and Trustee's Opposition to the Second Motion to Dismiss Filed by Defendant Helen Klebanoff (ECF No. 77), filed February 1, 2016. Defendant did not file a Reply. Also considered by the Court are the Trustee's Supplemental Brief in Opposition to Helen Klebanoff's Motion to Dismiss Under FRCP 12(b)(6) (ECF No. 115), filed May 25, 2016; and Defendant's Brief Supplementing Motion to Dismiss as to Limitations (ECF No. 121), filed June 1, 2016.

Having considered the motion, related briefing, and applicable law, the Court finds that Defendant's Motion to Dismiss (ECF No. 53) should be and is hereby **DENIED.**

**I.    BACKGROUND**

The following factual recitation is primarily taken from Plaintiff's Second Amended and Restated Complaint. 2d Am. Compl., ECF No. 34. This action arises out of an alleged complex, fraudulent enterprise to control and manipulate Latitude Solutions, Inc. ("LSI"), its subsidiaries, and

its stock. *Id*. ¶ 1. Plaintiff Carey D. Ebert, the Trustee (hereinafter "Ebert" or "Trustee") for the Chapter 11 estate of LSI, alleges that the fraudulent enterprise consisted of a "pump and dump" scheme (hereinafter "the Fraudulent Scheme") perpetrated by two groups of corporate insiders and co-conspirators (hereinafter the "First Board" and the "Second Board," respectively) who misused LSI, its creditors, and its shareholders. *Id*. ¶ 12. Throughout LSI's existence, Defendants allegedly created and utilized numerous LSI subsidiaries to funnel money and cloud the true ownership and operational control of LSI. *Id*. ¶ 134. Howard Appel ("Appel") led the Appel/Bartlett Group, which controlled both Boards and aggressively acquired millions of shares of LSI, beginning in 2010 and continuing through at least 2011. *Id*. ¶¶ 1, 160.

The First Board created LSI, paid themselves with LSI's cash, acquired upwards of 50% of its freely tradable shares, and sold them piecemeal. *Id*. ¶ 1. In addition, the First Board authorized LSI to enter into written and verbal agreements, sometimes called "consulting agreements," "finder's agreements," or "employment agreements" (collectively, "Consulting Agreements") with relevant Defendants in order to transfer millions in LSI's cash, stock and warrants without receiving equivalent value in return (the "Appel/Bartlett Group Transfers" and the "Insider Transfers," respectively). *Id.* ¶ 161. After the Appel/Bartlett Group and the Insider Defendants received their LSI shares and/or warrants, they typically traded them among themselves to stockpile huge blocks of LSI shares, in order to control the LSI market share and manipulate the stock price before selling the shares on the open market. *Id*. ¶ 165.

The Second Board, all corporate fiduciaries, partnered with the First Board to take the Fraudulent Scheme more global. *Id*. Knowing that LSI was being run by the Appel/Bartlett Group, the Second Board deliberately disregarded the reality of LSI's management by violating its fiduciary

2

duty, acting in their own self-interest, grossly mismanaging LSI's business, and squandering corporate assets. *Id*. ¶ 1. Meanwhile, LSI sank deeper into debt. *See id*. The Second Board learned no later than February 11, 2012 that Matthew Cohen ("Mr. Cohen") was feeding Appel insider information on LSI. *Id*. ¶ 380. On February 13, 2012, Appel met with members of the Second Board, in part to discuss Appel's control over LSI and the trading of its stock. *Id*. ¶ 431. However, the Second Board took no steps to stop the allegedly illegal and injurious practices, and did not inform shareholders and creditors that the Appel/Bartlett Group was controlling LSI and manipulating its stock prices. *Id*. ¶¶ 440–41.

Meanwhile, Defendants concealed LSI's ongoing insolvency, finally filing for Chapter 7 bankruptcy on November 9, 2012. *Id*. ¶¶ 1, 442–47. The Second Board submitted a dossier on Appel and his colleague, Mr. Cohen, an LSI founder and its CFO until the end of its existence, to the United States Department of Justice ("DOJ"), in order for the Second Board's allegations of wrongdoing to shield them from their own culpability. *Id*. ¶ 1. Ebert avers that the First Board and Second Boards' combined fraud and corporate waste ultimately caused LSI to fail, leaving creditors with potentially more than $40 million in debt. *Id*.

Defendants include Appel, Ernest A. Bartlett, III ("Bartlett"), Harvey N. Klebanoff ("Mr. Klebanoff"), Helen Klebanoff ("Ms. Klebanoff"), Vernon Ray Harlow ("Harlow"), Mr. Cohen, Deborah Cohen ("Ms. Cohen"), Hawk Management Group, Inc. ("Hawk Management Group"), Virginia Dadey ("Dadey"), Bellcrest Advisors, LLC ("Bellcrest"), Jeffrey Wohler ("Wohler"), Michael Gustin ("Gustin"), John Paul DeJoria ("DeJoria"), numerous Appel and Bartlett-related

3

entities,[1] Sean A. Spearman ("Spearman"), Ascendiant Capital Markets, LLC ("Ascendiant"). The only Defendant currently at issue is Ms. Klebanoff.

Ebert brings ten claims against Defendants, including: (1) avoidance and recovery of fraudulent transfers under §§ 544(B) and 550 of the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act, F.S.A. § 726.101, *et seq.*, or, alternatively, the Nevada Uniform Fraudulent Transfer Act, Nev. Rev. Stat. Ann. § 112.140, *et seq*., against Appel, Bartlett, Mr. Klebanoff, Ms. Klebanoff, Harlow, Mr. Cohen, Ms. Cohen, Dade, Wohler, Gustin, DeJoria, and all "Appel and Bartlett-related entities" (collectively, the "Insider Defendants"); (2) avoidance and recovery of fraudulent transfers under §§ 544(B) and 550 of the Bankruptcy Code, against the Appel/Bartlett Group and the Insider Defendants; (3) breach of fiduciary duty against the Director and Officer Defendants (Mr. Cohen, Mr. Klebanoff, Harlow, Wohler, Gustin, and DeJoria); (4) aiding and abetting breach of fiduciary duty, against Appel, Bartlett, Mr. Klebanoff, Harlow, Mr. Cohen, Dadey, Wohler, Gustin, DeJoria, all of the Appel and Bartlett-related entities, Spearman, and Ascendiant; (5) fraud against all Defendants, except Ms. Cohen, and Ms. Klebanoff; (6) conspiracy to commit fraud, against all Defendants except Ms. Cohen and Ms. Klebanoff; (7) aiding and abetting fraud, against all Defendants except Ms. Cohen and Ms. Klebanoff; (8) deepening insolvency, against DeJoria, Wohler, Gustin, Mr. Klebanoff, Harlow, and Mr. Cohen; and (9) unjust enrichment under the applicable state law of Florida or Nevada, against Appel, Bartlett, Mr. Cohen, Mr. Klebanoff,

---

[1] The Appel and Bartlett-related entities (hereinafter "the Appel/Bartlett-related entities"), include the additional named Defendants: RMS Advisors, Inc. ("RMS Advisors"), Capital Growth Realty, Inc. ("Capital Growth Realty"), Capital Growth Investment Trust ("Capital Growth Investment"), DIT Equity Holdings, Inc. ("DIT Equity"), Discretionary Investment Trust ("Discretionary Investment"), KWL Exploration and Development, Inc. ("KWL"), Moggle Investors, LLC ("Moggle") FEQ Realty, LLC ("FEQ Realty"), Wiltomo Redemption Foundation ("Wiltomo"), TSS Investments, Inc. ("TSS"), SLD Capital Corp. ("SLD"), DeRose Family Trust, Michael Garnick ("Garnick"), and SST Advisors, Inc. ("SST").

Ms. Klebanoff, Harlow, the "Appel and Bartlett-related entities," Spearmen, Ascendiant, and DeJoria. Ebert also seeks punitive damages and attorney's fees against all Defendants except Ms. Cohen and Ms. Klebanoff.

Ebert brings only Claims One and Two for avoidance and fraudulent transfer, and Claim Nine for unjust enrichment, against Ms. Klebanoff. Ms. Klebanoff filed the instant motion to dismiss all claims pursuant to Rule 12(b)(6).

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

*Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

"If it appears that a more carefully drafted pleading might state a claim upon which relief could be granted, the court should give the claimant an opportunity to amend his claim rather than dismiss it." *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 608–09 (N.D. Tex. 2006) (Fish, C.J.) (citing *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir.1985); *accord Taylor v. Dall. Cty. Hosp. Dist.*, 976 F. Supp. 437, 438 (N.D. Tex. 1996) (Fish, J.). Likewise, "leave to amend a

6

pleading should be freely given and should be granted unless there is some justification for refusal." *Kennard*, 420 F. Supp. at 609 (quoting *U.S. ex rel Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 386 (5th Cir 2003)).

## III.   ANALYSIS

Ms. Klebanoff moves to dismiss each of Ebert's claims on Rule 12(b)(6) grounds. The Court addresses each argument in turn.

### A.   Claims One and Two: Avoidance and Fraudulent Transfer

Ms. Klebanoff argues, "The Second Amended Complaint does not specifically suggest that [Ms.] Klebanoff did or failed to do anything other than her marriage to another Defendant and receipt of stock in a startup company more than three (3) years prior to bankruptcy." Def.'s Br. Supp. Mot. 4, ECF No. 54. As to Claim One, Ms. Klebanoff avers that "[t]he Second Amended complaint does not attempt to describe a nexus to the acts or omissions of this individual and damage to third parties." *Id.* at 5. As to Claim Two, Ms. Klebanoff claims that the Second Amended Complaint fails to allege that within two years of the bankruptcy filing: (1) "[Ms.] Klebanoff received or transferred any specific property of LSI," (2) "[Ms.] Klebanoff concealed any transfer of LSI," and (3) "any property of LSI moved through Helen Klebanoff." *Id.* at 8. However, in her most recent briefing, Ms. Klebanoff admits that "it is likely that the Plaintiff has pled facts raising an argument that $212.00 were transferred to her within the two (2) year limitation period provided for recovery under Title 11 U.S.C. § 548." Def.'s Supp. Br. 1, ECF No. 121.

Ebert retorts that she "has more than sufficiently stated a claim against [Ms.] Klebanoff for fraudulent transfer and unjust enrichment." Pl.'s Resp. 2, ECF No. 77. She argues, "As [Mr. Klebanoff]'s spouse, [Ms.] Klebanoff was a statutory insider of LSI during the time that her husband

7

was either an officer or director of LSI." *Id*. She avers Ms. Klebanoff "was the direct recipient of 2,023,960 shares of LSI stock, a transfer that occurred on July 31, 2009, while she was an insider of LSI. she was also the indirect recipient of at least $900,000 and more than 2.7 million shares of LSI transferred to [Mr. Klebanoff] during his tenure as director and CEO." *Id*.

First, the Court notes it previously determined that a false conflict of law exists among Florida, Nevada, and Texas law, as all three states apply the Uniform Fraudulent Transfer Act ("UFTA") and have identical language in their fraudulent transfer provisions, which is also "virtually identical" to the corresponding language in 11 U.S.C. § 548 of the Bankruptcy Code. *See* Order 27, May 12, 2016, ECF No. 90 (citing *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (collecting cases); *see also* F.S.A. § 726.101, *et seq.,* Nev. Rev. Stat. § 112.140, *et seq*., Tex. Bus. & Comm. Code § 24.001, *et seq*.). Thus, the Court applies Texas law to Ebert's fraudulent transfer claims. *See* Order 27, Mar. 12, 2016, ECF No. 90. Under Texas law, Ebert must plead and demonstrate that: (1) a transfer was made or an obligation incurred by a debtor within a reasonable time, with the transfer or obligation made with actual intent to hinder, delay, or defraud, any creditor; or (2) the transfer was made or an obligation occurred without receiving a reasonably equivalent value in exchange for the transfer or obligation. *See* Tex. Bus. & Comm. Code § 24.005. Texas law uses the "badges of fraud" test to determine whether an individual had the actual intent to delay, hinder, or defraud a creditor. *See*, *e.g.*, *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (citing *id*.).

The Fifth Circuit states the following factors courts may consider: (1) the lack or inadequacy of consideration received by the debtor; (2) family, friendship, or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the debtor, both before and after the transaction in question; (5) the existence

of cumulative effect of the pattern or series of transactions after the incurring of debt, onset of financial difficulties by the debt, or pendency of suits by creditors of the debtor; and (6) the general chronology of relevant events and transactions. *Id*. (citing Tex. Bus. & Comm. Code § 24.005; 11 U.S.C. § 548(a)(1)). "Not all, or even a majority, of the 'badges of fraud' must exist to find actual fraud. Indeed, '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Soza*, 542 F.3d at 1067 (citing *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988)).

The Court previously held that for purposes of Rule 9(b), a "[p]laintiff may name the relevant [d]efendants alleged to have committed the acts" either "in the *claim heading* or in the text of the claim itself." Order 20, May 12, 2016, ECF No. 90 (quoting *E. Poultry Distribs., Inc. v. Yarto Puez*, No. 3:00-CV-1578, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3, 2001) (Lynn, J.) (emphasis added)); *see also Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) (Fitzwater, J.) ("Except, for example, where a statute otherwise requires, plaintiffs are permitted under federal procedure to allege that more than one defendant . . . committed the same act. The court therefore declines to dismiss . . . on the basis that plaintiffs have engaged in impermissible group pleading."). Here, Ebert listed each of the relevant Defendants under each individual claim's heading; thus, this is not impermissible "group pleading." *Wu v. Tang*, No. 3:10-CV-0218-O, 2011 WL 145259, at *5 (N.D. Tex. Jan. 14, 2011) (O'Connor, J.). Furthermore, to the extent that Ebert pleads "constructive transfer," the statute "allows for fraudulent transfer without intent to defraud," and thus, "only the general pleading rules of Rule 8(a) must be satisfied." *E. Poultry Distribs., Inc.*, 2001 WL 34664163, at *2.

Furthermore, Texas law permits joint and several liability for most actions based in

intentional tort, as long as "the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than 50 percent." Tex. Civ. Prac. & Rem. Code § 33.013(b)(1); *see also In re Hous. Drywall, Inc.*, No. 05-95161-H4-7, 2008 WL 2754526, at *29 n.26 (S.D. Tex. July 10, 2008) ("It is within this Court's discretionary authority to impose joint and several liability in a suit involving fraudulent transfers."); *S.E.C. v. Res. Dev. Intern., LLC*, 487 F.3d 295, 299 (5th Cir. 2007).

After reviewing the allegations against Ms. Klebanoff in Ebert's Second Amended Complaint and applying the appropriate standard, the Court finds that as Ms. Klebanoff admits, Ebert has sufficiently pleaded that Ms. Kelbanoff had funds transferred to her within the appropriate statute of limitations. First, Ms. Klebanoff does not dispute that Ebert alleges a claim as to $212.00 allegedly transferred to her in 2011, from which Ebert asserts LSI did not receive a reasonably equivalent value in exchange. *See* Def.'s Supp. Br. ¶ 20, ECF No. 121; Pl.'s App. Supp. 2d Am. Compl. ("Schedule 1"), App. 40, 42, ECF No. 34; Pl.'s Resp. ¶ 17, ECF No. 77.

In addition, the Court finds that at this stage in the proceedings, Ebert has sufficiently alleged that the July 2009 transfer occurred within the appropriate statute of limitations. Under the Texas Bankruptcy Code, "if at the beginning of the bankruptcy proceeding, a state fraudulent-transfer claim is viable–because the state statute of limitations has not yet expired—then section 546(a) provides the trustee an additional two years from the time of his appointment to file a fraudulent-transfer action." *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 678 (S.D. Tex. 20007). "Under this analysis, it is immaterial if the limitations period accrues during the pendency of the bankruptcy case." *Id*. (quoting *In re Spatz*, 222 B.R. 157, 164 (N.D. Ill. 1998)). Here, the parties do not dispute that Ms. Klebanoff was the direct recipient of 2,023,960 shares of LSI stock on July 31, 2009, less

than four years prior to the date LSI filed for bankruptcy. Pl.'s Supp. Br. ¶ 11, ECF No. 115; Def.'s Supp. Br. ¶ 6, ECF No. 121. LSI's petition for bankruptcy was filed on November 9, 2012, and Trustee filed the bankruptcy action on November 9, 2014. 2d Am. Compl. ¶¶ 5, 9, ECF No. 34.

In addition, by virtue of Ebert sufficiently pleading that Mr. Klebanoff engaged in fraudulent transfers, Ebert has sufficiently alleged at this early stage that Ms. Klebanoff is the indirect recipient of these transfers and a statutory insider of LSI under the Uniform Fraudulent Transfers Act. *See* Order, May 19, 2016, ECF No. 106 (denying Mr. Klebanoff's motion to dismiss and holding that Ebert has sufficiently stated a fraudulent transfer claim as to Claims One and Two); *see also In re Feuerbacher*, No. 09-04198, 2011 WL 608122, at *6 (E.D. Tex. Feb. 11, 2011) ("The Debtor's transfers of the . . . [property] to the Defendant are tainted by several clear indicia of fraud in this case," including, that "[t]he Debtor made the transfers to her husband, an insider.") (citing 11 U.S.C. § 101(31)(A)(1); Tex. Bus. & Com. Code § 24.002(7)(A)(1)).

The Court finds that the proportion of liability Ms. Klebanoff will face is a factual issue not ripe for this Court's review at the 12(b)(6) stage in the proceedings. Ms. Klebanoff is alleged to have participated in the fraudulent scheme, and if demonstrated as true, Ms. Klebanoff and other Defendants may be held jointly and severally liable for all damages pursuant to Ebert's fraudulent transfer claims. Thus, Ms. Klebanoff's Motion to Dismiss is **DENIED** as to Claims One and Two.

    **B.**    **Claim Nine: Unjust Enrichment**

Ms. Klebanoff claims that "the cause of action for unjust enrichment has not been adequately ple[ade]d as it relates to her," averring she is "entitled to at least some description of her actions that were intentionally [sic] or in such a grossly negligent [sic]." Def.'s Br. Supp. Mot. 12, ECF No. 54.

The Court previously determined that a false conflict exists among Florida, Nevada, and

Texas law, and thus applies Texas law. *See* Order 26, May 12, 2016, ECF No. 90. Under Texas law, a person receives an unjust enrichment when he obtains "a benefit from another by fraud, duress, or the taking of undue advantage." *Heldenfels Bros. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Here, by virtue of Ebert adequately pleading that Ms. Klebanoff received an improper benefit as a result of the Fraudulent Scheme, the Court finds that Ebert has also claimed that Ms. Klebanoff has obtained a monetary benefit due to another through the receipt of illegally issued and traded shares. *See* 2d Am. Compl. ¶ 627, ECF No. 34; *see supra* Section III.A. Therefore, the Court finds that Ms. Klebanoff's Motion to Dismiss is **DENIED** as to Ebert's unjust enrichment claim.

IV.   **CONCLUSION**

Based on the foregoing, Ms. Klebanoff's Motion to Dismiss (ECF No. 51) is **DENIED.**

**SO ORDERED** on this **3rd day** of **June, 2016.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**