IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CAREY D. EBERT | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action NO.: 4:15-cv-225-0 |
| | § | |
| HOWARD MILLER APPEL, et al., | § | |
| | § | |
|     Defendants | § | |

### SUPPLEMENTAL BRIEF REGARDING MOTIONS IN LIMINE

**MAY IT PLEASE THE COURT:**

Plaintiff, Carey D. Ebert, as Trustee for the Chapter 11 estate of the Debtor, Latitude Solutions, Inc. ("Trustee"), respectfully submits this Supplemental Brief Regarding Motions in Limine, as requested by this Honorable Court at the Pretrial Conference. Specifically, the Trustee provides supplemental briefing regarding the admissibility of: Creditor claims and Proofs of Claims filed by creditors in the bankruptcy court; and the Trustee's potential fees.

    **I.**    **Creditor Claims and Proofs of Claim**

    1.    In the Motion in Limine filed by defendants Michael Gustin, Jeffrey Wohler, and John Paul DeJoria (collectively "Defendants"), Defendants argue that, with respect to creditor claims, the Trustee must not only prove the debt has been timely asserted through a proof of claim in the bankruptcy court, but also provide "separate proof through admissible evidence that the debt is in fact owed." (ECF No. 226, p. 5). According to Defendants, a representative of the creditor is necessary to "prove the validity of the debt" at trial." (*Id*. at p. 6).

    2.    However, the Trustee may testify to facts within her own personal knowledge, including testimony that she has examined the claims register (part of the court record of the

Northern District of Texas) and the proofs of claim filed in the underlying bankruptcy case. The facts as to the number and total dollar amount of claims filed are within her personal knowledge in her capacity as Trustee of LSI's bankruptcy estate, a position she has held for over five years. In so doing, the Trustee's testimony is consistent with Sections 501 and 502 of the Bankruptcy Code (statutes, not rules of procedure) and Bankruptcy Rule 3001, which taken together provide that a filed proof of claim is deemed allowed unless a party in interest objects and that "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Armstrong*, 320 B.R. 97, 102 (Bankr. N.D. Tex. 2005) (citing *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988)). In other words, the Trustee is not testifying regarding the truth of an out-of-court statement—she is testifying to the existence of that entry in the court records that she has personally observed as Trustee.

3.     The Trustee can also testify that, in fulfilling her court-appointed duties as Trustee, she intends to object to certain claims totaling a certain dollar amount, while also testifying that the bankruptcy judge will make the final determination as to the claim amount. Again, she will be testifying as to facts within her personal knowledge acquired during her administration of the LSI bankruptcy estate. And, of course, Defendants will have an opportunity to cross-examine the Trustee regarding her evaluation of the creditor claims.

4.     Although jurisprudence directly on point is somewhat limited (i.e., cases considering the admissibility of proofs of claim in adversary proceedings for damages purposes), this Honorable Court instructed the parties to consider *Official Comm. of Unsecured Creditors ex rel. estate of Lemington Home for the Aged v. Baldwin*, No. 10CV800, 2013 WL 2158543, at *17 (W.D. Pa. May 17, 2013), *aff'd in part, vacated in part on other grounds sub nom. In re Lemington Home for the Aged*, 777 F.3d 620 (3d Cir. 2015). In *In re Lemington Home for the Aged*, the court noted that properly filed proofs of claim constituted prima facie evidence of the validity and

amount of the claim, and the absence of any legal authority cited by the defendants in that case for the proposition that the proofs of claim must be excluded. *Id*. (citing 11 U.S.C. § 502(a); Fed. R. Bankr. Proc. 3001(f)). Relying in part on *Quintus Corp. v. Avaya, Inc. (In re Quintus Corp.),* 389 B.R. 390 (Bankr.D.Del.2008)), the *Lemington* court concluded that proofs of claim are admissible and "an accurate measure of damages that can be relied upon by the jury."

5.  Like Defendants in this case, the defendants in the *Lemington* case also argued that the proofs of claim were hearsay. 2013 WL 2158543, at *17. However, the court noted that Federal Rule of Bankruptcy Procedure 3001 overrides any claim that the hearsay rules bar the admissions of the proofs of claim. *Id.*; *see also In re Mahmud, N*o. 0810855BF, 2008 WL 8099115, at *8 (Bankr. E.D. Pa. Dec. 4, 2008) ("judicial notice of a proof of claim that has prima facie validity under Rule 3001(f) overcomes the hearsay objection to those factual averments underlying its claim, such as the amount owed to that creditor as of the date of the bankruptcy filing.").[1]

6.  In *Lemington*, the court agreed with defendants that the proofs of claim could not be a floor for damages (i.e., the minimum damage amount if the jury found defendants liable), required plaintiff to prove causation and instructed the jury on causation.[2] *Id*. Here, the Trustee is not seeking to use the proofs of claim as a "floor" for damages, but as a measure of damages on which the jury can rely once it has found causation. This use is consistent with the Trustee's role

---

[1] *Id*. (citing *In re Millspaugh*, 302 B.R. 90, 96 n. 9 (Bankr.D.Idaho 2003) (for purposes of determining that a claim is wholly unsecured under section 506(a), court accepts as true the averments of a secured proof of claim that was prima facie valid under Rule 3001(f)); see also *In re Carlisle*, 312 B.R. 555, 558–59 (Bankr.M.D.Pa.) (Rule 3001(f) makes authentication under Fed.R.Evid. 901 unnecessary), *aff 'd*, 320 B.R. 796 (M.D.Pa.2004); *20 Am. Jur. Proof of Facts 3d*, 521 § 7 (Am.Jur.2008) (to establish a lack of equity under section 362(d)(2), a creditor may rely upon secured proofs of claim that are prima facie valid under Rule 3001(f)).

The *Mahmud* court also recognized that Federal Rule of Evidence 201 is applicable since the fact that a given amount of proofs of claim have been filed in the bankruptcy case is a is a fact which can be accurately and readily determine from a source whose accuracy cannot reasonably be questioned. *In re Mahmud*, No. 0810855BF, 2008 WL 8099115, at *6–7 (Bankr. E.D. Pa. Dec. 4, 2008).

[2] At trial, the plaintiff's expert's testimony directly linked the proofs of claim to the defendants' conduct. *Official Comm. of Unsecured Creditors ex rel. estate of Lemington Home for the Aged*, 2013 WL 2158543, at *17.

and function in administering LSI's estate and is in accordance with applicable law. The proofs of claim as they exist today are a court record. Since they are deemed allowed, they are valid until someone objects. In many cases, particularly in larger cases, there are thousands of proofs of claim. The way the system is set up these proofs of claim are valid and enforceable in the bankruptcy proceeding. The holder of the claim doesn't need to do anything else to receive a distribution in the bankruptcy case.

7. The Defendants contend that future events may impact the amount of the claims and that some claims may ultimately be disallowed. That is true in many cases where the damages calculation is an educated guess. For example, just because you can't predict with certainty the value of a trademark or patent, the cost of future care of a tort victim, or the future value of a business doesn't mean that you don't allow evidence regarding those things to calculate damages. The claims and the testimony of the trustee are the best available evidence at this time. Yes, future events may alter the ultimate number but that's true of the other examples. A new discovery may make the patent obsolete next month. The tort victim may die next year. The trademark Bill Cosby Productions or Tiger Woods golf clubs may be damaged by the actions of the namesake. The business may fall on hard times or be unpredictably successful. Damages calculations are often not precise predictions of the future. The trustee's testimony regarding the ultimate amount of finally allowed claims will go to the weight of the evidence presented and should be admitted.

8. Pursuant to this Court's instruction, the Trustee also submitted her Rule 26(1)(A)(I) Second Supplemental and Restated Disclosure Statement this same date, as well as supplemental discovery responses, which reflect the claims she believes are valid and not objectionable based on her preliminary review ($11,321,147.00 in allowable unsecured claims; $85,945.86 by priority creditors that may be allowable) (Appendix p. 64). The supplemental discovery responses also

identify the sixteen (16) claims the Trustee believes are objectionable. (Appendix p. 69). Of those, half of the claims were never included by the Trustee in her calculation of creditor claims asserted in the Second Amended Complaint because they relate to insider transactions or fraudulent activities.[3] Those claims newly identified by the Trustee as objectionable represent a relatively nominal amount (approximately $100,000 related to Ford Motor Credit and tax-related claims). In short, the Trustee's position regarding the creditor claims has been generally consistent since the time of filing her SAC, and Defendants offer no valid basis to suggest she will suddenly employ a wholly different evaluation of the creditor claims at a later date if and when it becomes necessary to formally object to the claims.[4]

**II.     The Trustee's Potential Fees**

9.      At the pretrial conference, Defendants' counsel agreed to the exclusion of any testimony, evidence or reference to the contingency fee agreement between the Trustee and her counsel. However, Defendants would not agree to the exclusion of any testimony, evidence, or reference to the Trustee's statutory recovery of fees, thereby necessitating this motion.

10.     Evidence of attorney contingency fee agreements are routinely excluded as irrelevant and prejudicial. *See, e.g., Pucci v. Litwin*, No. 88 C 10923, 1993 WL 405448, at *1 (N.D. Ill. Oct. 4, 1993); *Falise v. Am. Tobacco Co.*, No. 99 CV 7392 (JBW), 2000 WL 1804602, at *1 (E.D.N.Y. Nov. 30, 2000); *see also Hogland v. Town & Country Grocer of Fredericktown Missouri, Inc.*, No. 3:14CV00273 JTR, 2015 WL 11089738, at *1 (E.D. Ark. July 17, 2015) (excluded without objection).

---

[3] Schedule 6 to the SAC listed the Trustee's creditor claims and did not include objectionable claims related to insider transactions or fraudulent activities. *See* ECF No. 32-8.

[4] As discussed in the Trustee's opposition to Defendants' motion in limine, the estate is administratively insolvent at present; the formal claims objection process is typically left until hear the end of the bankruptcy case; the additional resources required for the objection process is not necessary unless and until the estate has sufficient funds to pay creditors. (ECF No. 251, Opposition Memo p. 10).

4

11. This reasoning applies with even more force to the Trustee's potential fees. In administering the estate, the Trustee is statutorily required to investigate the activities of the debtor and assess potential claims of the estate. 11 U.S.C. § 1106(a). This includes, but is not limited to, claims against former directors, officers and other insiders.

12. Pursuant to 11 U.S.C. § 326(a), "the court may allow reasonable compensation" of a chapter 7 or 11 trustee for the trustee's services, payable after the trustee renders such services, and not to exceed the statutory caps.[5] Further, payment is not automatic—the Trustee must file a fee application for approval and her compensation is subject to court review. Section 330 sets forth factors for the court to consider in determining the amount of reasonable compensations to be awarded, including the time spent on such services, and whether the services were necessary or beneficial. 11 U.S.C. §330.

13. Defendants seek to introduce evidence of the Trustee's potential fee for the impermissible purpose of "proving" that the Trustee is motivated to file this suit by greed or some other improper reason; i.e., that the Trustee is going after a wealthy defendant in the hope of making a big fee. There is absolutely no corroborating evidence to support such an improper offer of proof. As is laid clear by the evidence that will be presented to the jury, there is more than compelling evidence for the jury to conclude that LSI was a fraud from inception, conceived and controlled by serial security fraud manipulators and their long-time friends. For defendants to even question, much less try to suggest to the jury, that the Trustee's motivation for filing suit is in any way improper should be rejected out of hand. Indeed, recall that the Second Board (DeJoria,

---

[5] Per 11 U.S.C.A. § 326(a), the Trustee's compensation is:

> not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

Wohler, and Gustin) actually filed a formal report against Appel and Cohen with the Department of Justice for their suspected "securities fraud" and "pump and dump" scheme (see Plaintiff's Trial Exhibit 325) and accused the First Board, inter alia, of "possible violations of federal and state securities laws by certain former directors, officers, management employees of the Company" in LSI's last public filing: a Form 8-K filed on 11/8/12—the day before LSI filed for bankruptcy (see Plaintiff's Trial Exhibit 369). Under the circumstances, if the Trustee would have not filed suit against all potentially liable parties for the debacle that was LSI, then perhaps there would be a basis for criticism. In short, defendants should not be allowed to criticize, either explicitly or implicitly, the Trustee for simply doing her job and, maybe, getting paid for it at some point in the future if the Bankruptcy Court so approves.

14. The Trustee's recovery of an undetermined amount of fees for fulfilling her statutorily mandated duties in administering LSI's bankruptcy estate is wholly irrelevant to the Trustee's case against the defendants and has no probative value. Fed. R. Evid. 403. Even assuming some argument for its probative value exists, such evidence would be unfairly prejudicial and should be excluded. *Id*.

**CONCLUSION AND PRAYER FOR RELIEF**

For all of the foregoing reasons, as well as those set forth in the Trustee's original Opposition to Defendants' Motion in Limine (ECF No. 251), the Trustee respectfully requests that this Honorable Order issue an Order as set forth below:

- Denying Defendants' Motion in Limine regarding Topic No. 3 (Creditor Claims and Proofs of Claim); and

- Excluding all evidence and testimony regarding the Trustee's potential fees.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

/s/ J. E. Cullens, Jr.
_____

J. E. Cullens, Jr. (admitted *pro hac vice*)
Jennifer Wise Moroux (admitted *pro hac vice)*
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
(225) 236-3636
cullens@lawbr.net


/s/ John C. Anderson
_____

John C. Anderson (admitted *pro hac vice*)
**ANDERSON LAW FIRM**
Post Office Box 82982
Baton Rouge, LA 70884
(225) 252-1645
jca@andersonfirm.net

/s/ Robin E. Phelan
_____

Robin E. Phelan
**ROBIN PHELAN LAW**
4214 Woodfin Drive
Dallas, TX 75220
(214) 651-5612
Robin@phelanlaw.org

7

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record herein via the Court's electronic notification system and on all unrepresented parties via U.S. mail at the address listed below on this 5th day of July, 2017.

        Harvey and Helen Klebanoff
        2667 N. Ocean Blvd., Apt. #609
        Boca Raton, FL 33431-7158

        /s/ J. E. Cullens, Jr.
        _____
        J. E. Cullens, Jr.