IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CAREY D. EBERT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-00225-O |
| | § | |
| MICHAEL GUSTIN et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER ON MOTIONS IN LIMINE**

On June 30, 2017, the Court held a hearing, at which it resolved the parties' pending motions to exclude (ECF Nos. 204–06) and most of the parties' motions in limine (ECF Nos. 221–26). *See* Min. Entry, ECF No. 259. The Court ordered additional briefing on the admissibility of (1) prior bad acts evidence; (2) LSI's referral to the DOJ and related exhibits; (3) proofs of claim from the related bankruptcy proceeding as evidence of damages; and (4) information regarding Trustee Carey D. Ebert's statutory fee payments. Each party has had an opportunity to brief the issues and the Court now decides these remaining issues. *See* ECF Nos. 262–70.

**I.      The Bettes Report and Prior Bad Act Evidence**

Defendants move to exclude any evidence of Defendants' prior criminal convictions or regulatory violations, or any civil actions against them. *See* Appel's Br. Supp. Mot. Limine 4–10, ECF No. 222; DeJoria's Mot. Limine 1–4, ECF No. 226. At the hearing, the parties agreed that Defendant Appel's 2004 criminal conviction was admissible for impeachment and the parties committed to reaching an agreement on which exhibits were admissible for that purpose. Therefore, the Court does not address that issue here.

The Trustee focused most of her discussion of Defendants' prior bad acts—both at the hearing and in her briefing—on the so-called "Bettes Report." *See generally* Pl.'s Suppl. Opp'n, ECF No. 265. As Defendants John Paul DeJoria, Michael Gustin, and Jeffrey Wohler's (collectively, the "DeJoria Defendants") considered joining LSI, Defendant Wohler hired former FBI agent Robert Bettes to do a due diligence background search of Defendants Howard Appel and Earnest Bartlett, and others involved in LSI. His report catalogues, among other things, Appel's and Bartlett's businesses, property ownership, bankruptcy records, traffic misdemeanors, criminal convictions, and a variety of other personal information. Defendants argue that the Bettes Report should be excluded as hearsay and impermissible character evidence under Federal Rule of Evidence 404. Having considered the additional briefing, the Court finds that the Bettes Report is admissible in part.

The Bettes Report and the information it contains is not being offered as character evidence but is instead admissible as intrinsic evidence, which is not excludable under Rule 404(b), because it provides context necessary to understand the DeJoria Defendants' decision to join LSI. *See United States v. Ceballos*, 789 F.3d 607, 620–21 (5th Cir. 2015) (evidence is not excludable under 404(b) when it is used "to complete the story of the crime by proving the immediate context of events in time and place . . . and to evaluate all of the circumstances under which the defendant acted"). Plaintiff offers that the evidence will show DeJoria asked Wohler to conduct due diligence on LSI in June 2011, prior to any of the DeJoria Defendants joining LSI. Pl.'s Suppl. Opp'n 5–6, ECF No 265. This resulted in Wohler hiring Bettes to conduct a background check on Appel and Bartlett, among others, in connection with their involvement in LSI. *Id.* There is evidence that Wohler, Gustin, and DeJoria each saw the report, and that DeJoria responded to the information in the report by saying Appel and Bartlett were "nice guys," and joined LSI. *Id.* The gravamen

2

of the Trustee's fraud claim is that the DeJoria Defendants intended to join, or aid and abet, the alleged ongoing Appel and Bartlett conspiracy related to LSI and to profit from it. This provides relevant context for the jury to consider when evaluating what the DeJoria Defendants knew and considered when they made the decision to join LSI. *United States v. Ceballos*, 789 F.3d at 620-21 ("In the context of a conspiracy, evidence is intrinsic to the underlying offense 'if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member.'").

For the same reasons, the Bettes Report is relevant circumstantial evidence that the DeJoria Defendants had knowledge that LSI was a fraudulent enterprise, as the Trustee alleges, and the DeJoria Defendants intended to join, or aid and abet, the alleged ongoing conspiracy. Therefore, the information contained in the Bettes Report is also admissible under Rule 404(b).

Finally, the Bettes Report is not hearsay as it is an opposing party's statement under Federal Rule of Evidence 801(d)(2)(C). Defendant Wohler hired Bettes to produce the report on behalf of the DeJoria Defendants, and statements by an authorized person to the principal are admissible under Rule 801(d)(2)(C). *See Kingsley v. Baker/Beech-Nut Corp.,* 546 F.2d 1136, 1141 (5th Cir. 1977). Additionally, any recitations of what others have said or alleged against Appel and Bartlett within the report are likewise admissible so long as they are offered solely as evidence that the DeJoria Defendants knew Appel and Bartlett controlled LSI and believed the allegations against Appel and Bartlett were true. These statements go to show the DeJoria Defendants' knowledge and intent, not the truthfulness of the allegations against Appel and Bartlett. Defendants may request an appropriate limiting instruction to address any potential misuse of this information.

However, the Court finds that portions of the Bettes Report contain information that, after balancing its probative value against its potential for unfair prejudice, delay, and confusion of the

issues, should be excluded under Federal Rule of Evidence 403.  Accordingly, information regarding the following should be excluded:

- Appel's arrest for marijuana possession;
- Any records of traffic charges;
- Real property owned by any of the subjects of the report, or related foreclosures; and
- Marriage history of any of the subjects of the report.

This information is not relevant to any of the Trustee's allegations and presents a high risk of prejudice to the subjects of the report.

Lastly, because the Trustee focused exclusively on the Bettes Report in her briefing, it is unclear to the Court what, if any, additional evidence of prior misconduct the Trustee might seek to introduce and for what purpose.  Therefore, the Trustee must seek approval from the Court prior to introducing any evidence of prior bad acts outside the scope of the Bettes Report.

## II.     The Burleson Report and Related Exhibits

The DeJoria Defendants also moved in their motion in limine to exclude evidence that LSI retained the Burleson Law Firm to investigate potential insider trading and stock manipulation and that the Burleson Law Firm ultimately made a referral to the Department of Justice (the "DOJ") regarding its investigation.  DeJoria's Mot. Limine 10–11, ECF No. 226.  At the June 30 hearing, the parties agreed to stipulate to the following related facts: LSI hired the Burleson law firm to investigate suspicions regarding potential insider trading and stock manipulation; after investigating, the Burleson firm recommended that the issue be referred to the DOJ; and LSI accepted that recommendation, which resulted in a referral to the DOJ.  *See* DeJoria's Tr. Br. 1, ECF No. 273.  However, the parties continue to disagree over which exhibits relevant to the stipulation are admissible.  Most notably, the Trustee contends that the substance of the Burleson referral to the DOJ should be admitted.

Having considered additional briefing on the subject, the Court finds that the Burleson referral to the DOJ and related exhibits should be excluded under Rule 403 for danger of confusing the issues, unfair prejudice, and undue delay. The Burleson documents contain the conclusion of LSI's then-attorneys that insider trading and stock manipulation potentially occurred at LSI. Introducing these issues through the work of LSI's own former attorneys poses a substantial risk of confusing the jury as to what claims it is considering in this lawsuit. Similarly, there is a substantial risk that the jury would rely upon the assessment of potential wrongdoing by LSI's former attorneys, resulting in unfair prejudice to Defendants. At the same time, while the Burleson documents offer probative value, Burleson did not become involved with LSI until near the end of the alleged conspiracy, and the documents are largely an assessment of what already occurred and a legal analysis of the issues from the Burleson perspective. Therefore, they can offer little new independent evidence of the issues before the jury.[1] Lastly, as Defendants are willing to stipulate to those facts necessary to tell the story of LSI's dissolution, i.e. Burleson's involvement and the referral to the DOJ, introduction of multiple exhibits to support this stipulation is unnecessary and would unduly delay these proceedings.

### III.  Bankruptcy Proofs of Claim

In their motion in limine, the DeJoria Defendants also moved to exclude any evidence of proofs of claims from the bankruptcy proceeding for which the Trustee could not also provide "separate proof through admissible evidence that the debt is in fact owed." DeJoria's Mot. Limine 5, ECF No. 226. Having considered the additional briefing, the Court finds that this motion should be granted.

---

[1] As the Trustee has not had an opportunity to respond to the DeJoria Defendants' July 8, 2017 brief on this matter, to the extent the Court is overlooking the probative value of any individual exhibit as to facts other than Burleson's assessment of potential wrongdoing, the Trustee may seek approval of the Court to admit such exhibit.

The bankruptcy proofs of claims are still subject to objection and have not been confirmed by the bankruptcy court. As the creditor claims may yet be disallowed in the bankruptcy proceeding, they are an unreliable measure of damages.[2] Further, absent a supporting witness with personal knowledge of the creditor claims, the proofs of claims are inadmissible hearsay.

The Trustee seeks to avoid the DeJoria Defendants' hearsay and reliability objections by testifying to the existence of the proofs of claims and her evaluation of the creditor claims based on her personal knowledge as bankruptcy trustee. However, at the time of her deposition, the Trustee had not evaluated the validity of the creditor claims, and she testified that she did not have an intention to do so. DeJoria's Suppl. Br. 2–3, ECF No. 262. It is unclear at what point the Trustee finally evaluated the creditor claims but she did not supplement her discovery responses regarding the creditor claims until Wednesday, July 5, 2017—five days prior to trial. Pl.'s Suppl. Br. 3–4, ECF No. 263. The Trustee has not provided any justification for failing to supplement her responses earlier. Admitting her testimony regarding the validity of creditor claims at this late hour would prejudice Defendants, who have not had an opportunity to depose the Trustee regarding her evaluation of the creditor claims. Therefore, the Trustee's testimony as to the validity of the proofs of claims is excluded under Federal Rule of Civil Procedure 37(c)(1). This

---

[2] At the pre-trial hearing, the Court directed the parties to address a Western District of Pennsylvania case in which the court held that "proofs of claim are an accurate measure of damages that can be relied upon by the jury." *Official Comm. of Unsecured Creditors ex rel. estate of Lemington Home for the Aged v. Baldwin*, No. 10CV800, 2013 WL 2158543, at *17 (W.D. Pa. May 17, 2013), *aff'd in part, vacated in part sub nom*, *In re Lemington Home for the Aged*, 777 F.3d 620 (3d Cir. 2015). In their response, the DeJoria Defendants noted that while the *Baldwin* court allowed the creditors' committee to introduce proofs of claims as evidence of damages, the creditors' committee later objected to many of the underlying claims in the bankruptcy proceeding. DeJoria's Suppl. Br. 4, ECF No. 262; *see also* DeJoria's Suppl. Br. App., Ex. 1–2, ECF Nos. 262-1–2. These claims were then disallowed by the bankruptcy court. DeJoria's Suppl. Br. App., Ex. 3–4, ECF Nos. 262-3–4. Based on this history, the Court finds Defendants' objections to the reliability of the proofs of claims persuasive and the Court declines to follow the *Baldwin* court here.

ruling does not limit the Trustee's ability to admit evidence of creditor claims for which the Trustee can offer admissible evidence that the debt is in fact owed.

### IV. The Trustee's Potential Financial Interest in the Suit

Lastly, the Trustee moves to exclude "any testimony, evidence, or reference to the Trustee's statutory recovery of fees." Pl.'s Suppl. Br. 4, ECF No. 263. The Trustee intends to testify as a fact witness in this case, and Defendants seek to introduce evidence that the Trustee will recover a percentage of any award as evidence of potential bias. DeJoria's Br. & Resp. 6, ECF No. 270. The Court finds that evidence of the Trustee's financial incentives in this matter is "classic evidence of bias, which is routinely permitted on cross-examination." *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003). The Trustee did not identify, nor could the Court find, any case indicating that the Trustee's status as a bankruptcy trustee provides her additional protection from impeachment. Evidence of the Trustee's statutory fee arrangement is, therefore, admissible for purposes of impeachment.

**SO ORDERED** on this **9th day** of **July, 2017**.

_Reed O'Connor_
Reed O'Connor
UNITED STATES DISTRICT JUDGE