IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **CAREY D. EBERT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:15-cv-00225-O** |
| | § | |
| **MICHAEL GUSTIN et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Defendants Howard Miller Appel, Ernest A. Bartlett, III, and Matthew Cohen's (collectively "Separate Defendants") Motion to Alter Judgment as a Matter of Law (ECF No. 294), filed August 3, 2017; Defendant John Paul DeJoria's Motion for Judgment as a Matter of Law (ECF No. 296), filed August 7, 2017; and Plaintiff Carey D. Ebert's Amended Motion for Judgment (ECF No. 297), filed August 21, 2017. The motions have been fully briefed and are ripe for review.

Having considered the Motions, related briefing, and relevant law, the Court finds that Separate Defendants' Motion to Alter Judgment as a Matter of Law (ECF No. 294) should be and is hereby **DENIED**; Defendant John Paul DeJoria's Motion for Judgment as a Matter of Law (ECF No. 296) should be and is hereby **DENIED**; and Plaintiff's Amended Motion for Judgment (ECF No. 297) should be and is hereby **GRANTED**.

## I.      BACKGROUND

Plaintiff Carey D. Ebert ("Ebert" or "Plaintiff"), the Trustee for the Chapter 11 estate of Latitude Solutions, Inc. ("LSI"), alleged that Defendants conducted a complex, fraudulent

enterprise to control and manipulate LSI, its subsidiaries, and its stock. Specifically, Plaintiff alleged that two groups of corporate insiders and co-conspirators—the "First Board" and the "Second Board," respectively—misused LSI, its creditors, and its shareholders, by perpetrating a "pump-and-dump"[1] scheme. 2d Am. Compl. ¶ 12, ECF No. 34. Plaintiff alleged that the Second Board, all of whom were corporate fiduciaries, partnered with the First Board to continue this fraudulent scheme. *Id*. She also alleged that the Second Board deliberately disregarded warning signs from LSI's management, thereby violating its fiduciary duty, acting in its own self-interest, grossly mismanaging LSI's business, and squandering corporate assets. *Id.* ¶ 1. She further alleged that the combination of the First and Second Boards' fraud and corporate waste caused LSI to go bankrupt, leaving creditors with as much as $40 million in debt owed. *Id.*

The parties tried this dispute for five consecutive days between July 10, 2017, and July 14, 2017. *See* Min. Entries, ECF Nos. 279–84. On July 13, 2017, near the end of trial, the Court granted Plaintiff's motion to dismiss all of her fraud claims against Defendants Harvey Klebanoff (a/k/a Kaye); Michael Gustin; Jeffrey Wohler; RM Advisors, Inc.; Capital Growth Realty, Inc.; Capital Growth Investment Trust; DIT Equity Holdings; FEQ Realty, LLC; Discretionary Investment Trust; KWL Exploration and Development, Inc.; Moggle Investors, LLC; Wiltomo Redemption Foundation; and SST Advisors. *See* July 17, 2017 Order, ECF No. 285; Min. Entry, ECF No. 283. Claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and any possible resulting damages—against Defendant DeJoria and the Separate Defendants—were the only claims that remained for jury consideration.

On July 14, 2017, the jury found that Cohen and DeJoria breached their fiduciary duty to

---

[1] "In a typical pump-and-dump, corporate insiders in a micro-cap give themselves stock in a company, intentionally manipulate the stock's price through press releases, marketing, and illegal trades, and then unload their shares at extravagant profits before letting the company die." Pl.'s 2d Am. Compl. 31, ECF No. 34.

LSI (Jury Question 1); and that Appel, Bartlett, and DeJoria each aided and abetted Cohen's breach of fiduciary duty to LSI (Jury Question 2). Jury Charge 6–7, ECF No. 287. The parties then submitted the post-trial motions at issue here. *See* ECF Nos. 294, 296, 297. The Court will consider each in turn.

## II.    LEGAL STANDARDS

### A.    Rule 50 Judgment as a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law in jury trials. *See* FED. R. CIV. P. 50; *Weisgram v. Marley Co.*, 528 U.S. 440, 448–49 (2000). Rule 50(a) "authorizes the entry of judgment as a matter of law '[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *See James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting FED. R. CIV. P. 50(a)). "It allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram*, 528 U.S. at 448 (quoting 9 Wright & Miller, Federal Practice and Procedure § 2521 (2d ed. 1995)). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b).

"[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990)). "Credibility determinations, the weighing of

the evidence, and the drawing of legitimate inference from the facts are jury functions, not those of a judge." *Id.* at 150–51 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

"A motion for judgment as a matter of law is appropriate if, after considering the evidence presented and viewing all reasonable inferences in the light most favorable to the nonmovant, the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict." *Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 697 (5th Cir. 1997). "If there is substantial evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion," then judgment as a matter of law is not appropriate. *Id.* "In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture." *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) (citing *Gulf Coast Real Estate Auction Co. v. Chevron Indus., Inc.*, 665 F.2d 574, 577 (5th Cir. 1982)). "We must remember, however, that evidence sufficient to support a jury verdict must be *substantial* evidence." *Guile v. United Sates*, 422 F.3d 221, 227 (5th Cir. 2005) (emphasis in original). "[T]he party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [his] claim." *See Anthony*, 284 F.3d at 583. Finally, "[t]he 'standard of review with respect to a jury verdict is especially deferential.'" *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (quoting *Brown v. Bryan Cnty*, 219 F.3d 450, 456 (5th Cir. 2000)).

### B.      Rule 59 Motion for New Trial

Under Federal Rule of Civil Procedure 59, the Court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59 (a)(1)(A). While this rule does not enumerate specific grounds for

granting a new trial, the Fifth Circuit has found that a new trial is appropriate where: (1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979).

### C.     Rule 59(e) Motion to Alter or Amend Judgment

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment within twenty-eight days after entry of the judgment. FED. R. CIV. P. 59(e). Motions for reconsideration are permitted in limited situations, primarily to correct "a manifest error of law or fact" or "to present newly discovered evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007). A motion for reconsideration is not a means for "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

## III.     ANALYSIS

### A.     Separate Defendants' Rule 50 Motion

On August 3, 2017, Separate Defendants filed a motion for judgment as a matter of law under Rule 50, or in the alternative, a motion to alter or amend the judgment, and for a new trial under Rule 59. Separate Defs.' Mot. JMOL, ECF No. 294. Separate Defendants argue that Plaintiff failed to establish the existence of a fiduciary duty as to Cohen, a condition precedent to the jury finding that Defendants breached that duty or aided and abetted that breach. *Id.* at 7. Separate Defendants therefore argue that the evidence in the record is insufficient to support the jury's

finding on Jury Questions 1 and 2. The Court will analyze the motion as to each defendant below.

1.   Matthew Cohen

The jury found that Cohen breached his fiduciary duty to LSI's creditors and awarded Plaintiff damages in the amount of $6.5 million in connection with Damage Element 1[2] and $400,000.00 in connection with Damage Element 2.[3] Jury Charge 8, ECF No. 287. Separate Defendants argue that there is insufficient evidence to support the jury's finding that Cohen breached his fiduciary duty to LSI's creditors because, *inter alia*, (1) as a matter of law, corporations only owe their creditors a fiduciary duty when they are insolvent, and LSI was not insolvent during 2011 when the alleged breach occurred; and (2) Cohen had no duty to disclose Appel's involvement with LSI before LSI contracted with Jabil Circuits, Inc. ("Jabil") because Appel was only a minority shareholder at the time and was only employed by LSI as a consultant after LSI contracted with Jabil. Br. Supp. Separate Defs.' Mot. JMOL 5–7, ECF No. 294-1.

Plaintiff responds that the jury had sufficient evidence to find, and correctly found, that Cohen breached his fiduciary duty, because he (1) acquired for LSI a multimillion dollar contract with Jabil for an illegitimate purpose; (2) allowed Appel, who had a previous conviction for securities fraud, to control LSI; and (3) failed to disclose Appel's involvement to the public and outside creditors. Pl.'s Resp. Defs.' Mot. JMOL 4, ECF No. 306. Plaintiff does not address in writing the argument that she failed to prove LSI was insolvent before May 2011, when Cohen committed LSI to the Jabil contract, but Plaintiff's counsel orally argued on July 12, 2017, during

---

[2] The Jury Charge on Damage Element 1 asks the jury to find whether "[t]he reasonable cash market value of liabilities incurred by LSI" was "a proximate cause of that defendant's breach of fiduciary duty, [and] which liabilities are still owed and have not yet been paid, if any." Jury Charge 8, ECF No. 287.

[3] The Jury Charge on Damage Element 2 asks the jury to find whether  Defendants' breach of fiduciary duty "proximately caused" damage to LSI, and "[t]he reasonable market value of any gains to that defendant (including salaries, consulting fees, net proceeds from stock issuances to directors and/or officers of LSI, and other expenses) . . . ." Jury Charge 8, ECF No. 287.

the hearing on the Rule 50 Motions, that "[t]here's ample evidence in the record that at that time, pretty much at all times, LSI was insolvent and as a matter of law fiduciary duties in an insolvent company run not to just the company and the shareholders but to creditor [sic]." Min. Entry at 23:20–23, ECF No. 291.

In resolving this motion as to Cohen, the Court must determine whether the evidence Plaintiff presented to the jury was sufficient regarding (1) proof of LSI's insolvency before Cohen committed LSI to the Jabil contract; and (2) Cohen's actions constituting breach of his fiduciary duty to LSI's creditors, namely Jabil. The Court addresses each prong in turn.

### a.  *Sufficiency of the Evidence to Show LSI was Insolvent*

Separate Defendants must show that Plaintiff failed to provide sufficient evidence that LSI was insolvent as a matter of law during the time that Cohen was an officer and director of LSI and before Cohen committed LSI to the Jabil contract.[4] Under Texas law corporate officers and directors only owe corporate creditors a fiduciary duty when their corporation is insolvent. *Conway v. Bonner*, 100 F.2d 786, 787 (5th Cir. 1939); *see also Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 534 n.24 (5th Cir. 2004) ("Officers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' as in this case, have expanded fiduciary duties to include the creditors of the corporation."). Texas law defines "insolvent" as "(A) having generally ceased to pay debts in the ordinary course of business other than as a result of a bona fide dispute; (B) being unable to pay debts as they become due; or (C) *being insolvent within the meaning of the federal bankruptcy code*." TEX. BUS. & COM. CODE § 1.201(b)(23) (emphasis added). According to the Federal Bankruptcy Code, "insolvent" means a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—(i)

---

[4] It is undisputed that Cohen was an officer and director of LSI from March 2009 to June 2012. *See* Jury Charge 5, ECF No. 287.

property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 [of the Bankruptcy Code]" 11 U.S.C. § 101(32)(a).

The Court, having reviewed the entire record, finds sufficient evidence to support a jury finding that LSI was insolvent at the time Cohen, as an officer and director of LSI, committed the company to the Jabil contract and allegedly breached his fiduciary duty to both LSI and now-creditor Jabil.

First, Plaintiff offered into evidence LSI's Form 10—the financial disclosure document filed with the U.S. Securities and Exchange Commission ("SEC") by which LSI went public. Cohen testified that on Form 10's balance sheet for years 2008 and 2009, LSI had a negative net worth and that the liabilities exceed the assets of the company. *See* Defs.' Ex. 421 at 58–65, ECF No. 276. Plaintiff's counsel asked Cohen, "[D]oes that mean that as of that date at least by some definitions the company was technically insolvent?" *Id.* Cohen responded, "Yes. That's what it indicates. A negative net worth would be a sign of insolvency." *Id.*

Additionally, Dr. Joseph Anthony McGee, Jabil's executive vice president, testified about invoices Jabil sent to LSI pursuant to their master service agreement. Dr. McGee testified that LSI never paid its invoices as they became due, and that around the time of November 2011, LSI's non-payments caused executives at Jabil to become concerned that LSI could not pay its arrearages. Dr. McGee testified at length about the specifics of invoices and growing debt that LSI faced in its dealings with Jabil. *See* July 11, 2017 Trial Tr. (McGee testimony); Pl.'s Trial Ex. 176.

Finally, McBroom, an employee of Select Energy Services and the co-inventor of two patents relating to water remediation technology, testified about his experience working with LSI. Specifically, McBroom testified that LSI's October 6, 2011 Press Release regarding the successful

deployment of water remediation technology by LSI was not a truthful statement. He also testified that LSI had never transitioned from a deployment phase to a commercial phase, meaning that LSI was never a revenue-producing company. In further support of McBroom's testimony, Plaintiff's counsel submitted at trial the deposition testimony Jeffrey Wohler, LSI's President and chief executive officer ("CEO") from January 2012 until August 2012, who claimed that LSI was never commercially viable. Pl.'s App. Defs.' Mot. JMOL 62, ECF No. 307-1 (hereinafter "Pl.'s App.").

Under the Federal Bankruptcy Code, an entity whose debts are greater than its assets falls within the statutory definition of insolvency. 11 U.S.C. § 101(32)(a). The Court finds that the testimony and other evidence identified above is more than sufficient for a reasonable jury to find that LSI was insolvent before LSI contracted with Jabil. The Court therefore also finds that Cohen owed a fiduciary duty to LSI's creditor Jabil. The Court will next address whether there is sufficient evidence to show that Cohen breached his fiduciary duty to LSI's creditor Jabil.

>    b.    *Sufficiency of the Evidence to Show Cohen Breached His Fiduciary Duty*

Separate Defendants argue Cohen never had a duty to disclose Appel's involvement with LSI before the execution of the Jabil contract, and therefore, the jury's finding that he breached his fiduciary duty must be overturned. Br. Supp. Separate Defs' Mot. JMOL 4, ECF No. 294-1. Plaintiff responds that the jury correctly found that Cohen breached his fiduciary duty to LSI in at least three ways: (1) he caused LSI to enter into a multimillion dollar contract with Jabil for an illegitimate purpose; (2) he allowed Appel, a convicted felon, to control LSI; and (3) he failed to disclose Appel's involvement to the public and outside creditors. Pl.'s Resp. Defs.' Mot. JMOL 4, ECF No. 306.

Under Texas law, a breach of fiduciary duty claim requires: (1) a fiduciary relationship; (2) a breach of this relationship; and (3) an injury to the plaintiff or benefit to the defendant

resulting from this breach. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). It is also well established that "[c]orporate officers owe fiduciary duties to the corporations they serve." *Duke Energy Int'l L.L.C. v. Napoli*, 748 F. Supp. 2d 565, 667 (S.D. Tex. 2010) (citing *Loy v. Harter*, 128 S.W.3d 397, 407 (Tex. App.—Texarkana 2004, pet. denied)). Consistent with these legal principles, the Court instructed the jury:

> You are instructed that an officer or director owes a fiduciary duty to a corporation during the period of time that he was an officer or director of the corporation. The period of time relevant to each defendant in connection with this question for LSI is as follows:
>
> 1. Matthew Cohen --         March 2009 until June 2012.
> 2. John Paul DeJoria--      October 21, 2011 until September 14, 2012.
>
> You are further instructed that to prove that a defendant failed to comply with his fiduciary duty to LSI, Carey Ebert, as Trustee, must prove that the defendant failed to comply with either a duty of loyalty or duty of care owed to LSI. The duty of loyalty requires that an officer or director act in good faith and not allow his or her personal interest to prevail over the interest of the corporation. The duty of loyalty is described as requiring an extreme measure of candor, unselfishness, and good faith on the part of the officer or director. The duty of care requires that the officer or director handle his corporate duties with the diligence and prudence that an ordinarily prudent person would use under similar circumstances. . . .[5]

Jury Charge 6, ECF No. 287. The jury found that Cohen breached his fiduciary duty to LSI. *Id.* For the following reasons, this finding is supported by sufficient evidence.

Plaintiff argued and presented evidence at trial that Cohen caused LSI to enter into the Jabil contract in May 2011 for illegitimate reasons, namely "to give the misleading appearance of commercial viability to the market for the purpose of furthering defendants' attempted pump-and-dump scheme." Pl.'s Resp. Defs.' Mot. JMOL 5, ECF No. 306. Cohen testified that he personally dealt with Jabil prior to the signing of the contract. Pl.'s App. 116, ECF No. 307-1. As stated above, McBroom and LSI CEO Wohler testified that LSI was not commercially viable at any time

---

[5] This section of the jury charge further instructed the jury on the application of business judgment rule to actions by corporate officers and directors.

before or after the execution of the Jabil contract. Pl.'s App. 62, ECF No. 307-1. Wohler testified

that when he was doing due diligence on behalf of DeJoria, he could not determine the operational

cost of the water remediation technology, which meant that LSI's business model was unsound.

Pl.'s App. 56–57, ECF No. 307-1. Furthermore, LSI's Form 8K—filed with the SEC the day before

LSI initiated bankruptcy proceedings—states that LSI "exploded its debt investment without a

committed or potential revenue to service such debt." Pl.'s App. 21, ECF No. 307-1.

There is also evidence of Plaintiff's other two theories of Cohen's breach—that Cohen

allowed Appel to control LSI and failed to disclose Appel's involvement to outside investors. *See*

*infra* Section III(A)(2) (finding evidence of Appel's involvement in LSI decision-making

sufficient to support a jury finding that Appel aided and abetted Cohen's breach of fiduciary duty).

Upon review of the entire record, the Court finds sufficient evidence to support a jury finding that

Cohen breached his fiduciary duty to LSI.

The Court also finds sufficient evidence to support a jury finding that Cohen's breach

proximately caused $6.9 million in damages. *See* Jury Charge 8, ECF No. 287. Plaintiff argued

that because Cohen entered the Jabil contract with knowledge that LSI would not be able to

perform under the contract, the damages incurred as a result of this breach totaled slightly over

$9.5 million (the amount of debt LSI owed to Jabil). To support this theory, Plaintiff presented

Jabil's proof of claim filed in bankruptcy court and trial testimony of Jabil representatives. *See*

Pl.'s Trial Exs. 175, 180. This is more than some evidence to show that the execution of the Jabil

contract proximately caused LSI damages. It was within the jury's discretion to award below the

requested $9.5 million based on their credibility determinations.

The jury also awarded $2 million in exemplary damages against Cohen based on clear and

convincing evidence that Cohen acted with malice or gross negligence. Jury Charge 9–10, ECF

No. 287; *see also* TEX. CIV. PRAC. & REM. CODE § 41.003 (requirements for award of exemplary damages). The Court finds this award, based on the evidence of Cohen's conduct presented above, is appropriate and reasonable in relation to the actual damages awarded. *See Roth v. Mims*, 298 B.R. 272, 297–98 (N.D. Tex. 2003).

Accordingly, Separate Defendants JMOL is **DENIED** as to Cohen.

### 2.   Howard Appel

The jury found that Appel aided and abetted Cohen's breach of fiduciary duty and it awarded $2.5 million in damages in connection with Damage Element 2.[6] Jury Charge 7–8, ECF No. 287. Separate Defendants argue that there is insufficient evidence to support these findings, namely that Appel was a minority shareholder before LSI executed the Jabil contract, and that Appel did not become an outside consultant to LSI until June 24, 2011. Br. Supp. Separate Defs.' Mot. JMOL 8–9, ECF No. 294-1. Further, Separate Defendants argue that Plaintiffs failed to present evidence of proximate cause with respect to the claim for damages assessed against both Appel and Bartlett. *Id.* at 16–17. They argue that Plaintiff's expert on damages "did not offer any opinion on causation between the alleged $5.1 million and the breach of fiduciary duty or aiding and abetting breach of fiduciary duty." *Id.* at 18.

Plaintiff responds that the evidence supports a reasonable jury's conclusion "that Appel's participation in LSI and substantial assistance to Cohen started in early 2011 or late 2010" and Appel's participation was a proximate cause of Cohen's breach, resulting in the jury's reasonable finding of $2.5 million in damages. Pl.'s Resp. Defs.' Mot. JMOL 16–19, ECF No. 306.

Under Texas law, an aiding and abetting breach of fiduciary duty claim requires: (1) the existence of a fiduciary relationship; (2) a third party with knowledge of the fiduciary relationship;

---

[6] *See supra* footnote 2 for Damage Element 2 of the jury charge.

and (3) that third party's participation in the breach of that fiduciary relationship. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten,* 59 S.W.3d 717, 721–22 (Tex. App. 2001). Consistent with these legal principles, the Court instructed the jury:

> To establish a claim for aiding and abetting a breach of fiduciary duty, Carey Ebert, as LSI's trustee, must prove: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship.

Jury Charge 7, ECF No. 287. The first element here is undisputed—the parties agree that Cohen was an officer and director of LSI and Cohen owed LSI a fiduciary duty. *Id.* at 5, 7. Second, Plaintiff offered more than some evidence that Appel knew that Cohen was an officer and director of LSI—including, for example, Appel's own testimony about his meeting with "Harvey Kaye, my friend Kenny, and Matt Cohen" in October 2010. *See* Pl.'s App. 77–78, 85, ECF No. 307-1.

Separate Defendants argue that there is no evidence in the record to support a jury finding that Appel "knowingly participated and provided substantial assistance in connection with the alleged breach of fiduciary duty" by Cohen, and therefore Plaintiff failed to prove an essential element of their claim. Br. Supp. Separate Defs.' Mot. JMOL 9, ECF No. 294-1. The Court disagrees. Plaintiff provided more than some evidence as to this element such that a reasonable jury could conclude that Appel knowingly participated in, and substantially assisted, Cohen's breach. Plaintiff presented evidence that Appel participated in LSI executive committee meetings (Pl.'s Trial Ex. 88); shared non-public information with Cohen (Pl.'s Trial Exs. 23, 81), drafted and edited LSI press releases (Pl.'s Trial Exs. 26, 145), and attempted to control the Board of Directors of LSI (Pl.'s Trial Ex. 70). Numerous LSI directors and associates testified that Cohen gave Appel access to LSI documents and allowed Appel to exercise control over LSI company policy and financial decisions. *See* Pl.'s App. 63, 66, 124, 128, 136–37, ECF No. 307-1. The

evidence here sufficiently supports a reasonable jury finding that Plaintiff met her burden to prove the third element—that Appel knowingly participated and provided substantial assistance to Cohen in his breach of fiduciary duty. For the reasons stated above, the Court finds that there is sufficient evidence for a jury finding that Appel aided and abetted Cohen's breach of fiduciary duty.

Separate Defendants next challenge the $2.5 million damages awards against Appel and Bartlett, claiming Plaintiff failed to prove that their actions proximately caused damage to LSI. They rely on *Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 552 (N.D. Tex. 2005), for the proposition that "expert testimony is required under Texas law to prove causation where the underlying tort is of such a nature as not to be within the experience of the layman." Br. Supp. Separate Defs.' Mot. JMOL 17, ECF No. 294-1. They argue that Plaintiff's expert "Manz did not offer an opinion on causation between the alleged $5.1 million" and the breach, and therefore Appel and Bartlett cannot be found liable for the $2.5 million each or the additional $5 million in punitive damages assessed against Appel by the jury. Plaintiffs argue that under Texas law "lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman, to determine, with reasonable probability, the causal relationship between the event and the condition," and that this Court should review the evidence in this case under that standard. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984).

But *Qualls* is legally and factually distinguishable. First, *Qualls* involved an action where homeowners brought claims for breach of the homeowner's policy, and *inter alia* breach of the duty of good faith and fair dealing against their insurance company. *Qualls*, 226 F.R.D. at 552. The court in *Qualls* considered if expert testimony on the issue of causation is required to prove damages under Texas law. *Id.* at 554–55. A faulty sewer pipe caused mold to develop in the Qualls' home, which led to the damages at issue. The court found that expert testimony was required to

establish causation because "although it may be within general experience that water can cause mold, it is not within general experience that a buried sewer pipe that does not leak under normal flow conditions could cause mold over an extended distance throughout a house." *Id.* at 558. The *Qualls* court cited cases examining medical claims, where "medically complex diseases and causal ambiguities compound the need for expert testimony." *Id.* at. 556 (citations omitted). *Qualls* is therefore neither factually nor legally similar to the case at hand. Unlike *Qualls*, this case does not present the same kind of complex issues and ambiguities that would persuade the Court to depart from the standard set by the Texas Supreme Court in *Morgan* to prove causation. 675 S.W.2d at 733. Therefore, Plaintiff did not need to provide expert testimony on the causation issue if a reasonable jury of laymen could determine with reasonable probability that Appel's actions were a substantial factor in bringing about at least $2.5 million in damages to LSI.

There is more than some evidence in the record to support the jury's finding on causation. Manz testified that his extensive investigation into LSI's financials informed his opinion that certain defendants, including Appel, profited $5.1 million from the sale of LSI stock. Trial Tr. (Manz testimony) 32–34, ECF No. 288. There is also evidence in the record of Appel's involvement with the terminated defendants—the "friends and family" who were included in Manz's damage assessment as entities who profited from selling LSI stock. Appel also testified at trial that he and Bartlett received "approximately a million and-a-half shares of restricted stock of LSI," warrants at a $2 strike price, and $350,000 in cash paid to FEQ Realty as a form of compensation for their efforts. This evidence is more than sufficient to support a jury finding that Appel caused, and is liable for, at least $2.5 million in damages.

The jury also awarded $5 million in exemplary damages against Appel. Jury Charge 10, ECF No. 287; *see also* TEX. CIV. PRAC. & REM. CODE § 41.003 (requirements for award of

exemplary damages).[7] The award of $5 million in exemplary damages equals two times the award of $2.5 million in actual damages assessed by the jury, and does not exceed the exemplary damages cap under § 41.008(b)(1)(A). Therefore, the Court finds this award, based on the evidence presented above of Appel's conduct, does not exceed the statutory cap and is appropriate and reasonable in relation to the actual damages awarded. *See Roth v. Mims*, 298 B.R. 272, 297–98 (N.D. Tex. 2003).

Accordingly, Separate Defendants JMOL is **DENIED** as to Appel.

3.    Earnest Bartlett

The jury found that Bartlett aided and abetted Cohen's breach of fiduciary duty and it awarded $2.5 million in damages in connection with Damage Element 2.[8] Jury Charge 7–8, ECF No. 287. Separate Defendants argue that there is insufficient evidence to support these findings because Plaintiff failed to prove that Bartlett "knowingly participated in and provided substantial assistance in connection with the alleged breach of [ ] Cohen's fiduciary relationship to LSI . . . ." Br. Supp. Separate Defs.' Mot. JMOL 19, ECF No. 294-1.

To prove Bartlett aided and abetted Cohen's breach of fiduciary duty, Plaintiff was required to prove: (1) the existence of a fiduciary relationship; (2) that Bartlett knew of the fiduciary relationship; and (3) that Bartlett was aware that he was participating in the breach of that fiduciary relationship. *Meadows*, 492 F.3d at 639. The first element here is undisputed—the parties agree that Cohen was an officer and director of LSI and Cohen owed LSI a fiduciary duty. Jury Charge 5, 7, ECF No. 287. Second, Plaintiff offered more than some evidence that Bartlett knew that

---

[7] Texas imposes a cap on exemplary damages and provides "(b) [e]exemplary damages awarded against a defendant may not exceed an amount equal to the greater of: (1)(A) two times the amount of economic damages; (B) plus an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; (2) or $200,000." TEX. CIV. PRAC. & REM. CODE § 41.008.
[8] *See supra* footnote 2 for Damage Element 2 of the jury charge.

Cohen was an officer and director of LSI—Appel testified about his close business relationship with Bartlett and how he encouraged Bartlett to invest in LSI through his company FEQ Realty, LLC ("FEQ Realty"). Pl.'s App. 76–78, ECF No. 307-1; Def.'s Demo. Trial Ex. 30. Bartlett, through FEQ Realty, invested in LSI and it is therefore reasonable to infer that as an investor, he knew of LSI's officers and directors through LSI's public disclosure documents and other means. Pl.'s Trial Ex. 143. Bartlett confirmed in trial testimony that he was intimately involved with FEQ Realty and the company signed a written consulting agreement with LSI. Pl.'s App. 91, ECF No. 307-1; Pl.'s Trial Ex. 114). The Court finds that the jury could reasonably infer from all of the evidence presented that Bartlett knew of Cohen's fiduciary relationship with LSI.

Lastly, Separate Defendants argue that Plaintiff failed to prove an essential element of their claim because there is no evidence in the record to support a jury finding that Bartlett knowingly participated and provided substantial assistance in connection with Cohen's breach. Br. Supp. Separate Defs.' Mot. JMOL 18–19, ECF No. 294-1. The Court disagrees. Bartlett's company FEQ Realty had a consulting agreement giving it broad powers to manage and control LSI's affairs. Pl.'s Trial Ex. 114. There is also evidence that Bartlett and Appel regarded Cohen as their inside man within LSI who they could use for information and control. Bartlett attended LSI executive committee meetings (Pl.'s Trial Ex. 88) and convinced DeJoria to protect Cohen from being fired (Pl.'s Trial Ex. 318). LSI associates also believed that Bartlett "interfere[ed] with the day-to-day management of LSI almost on a daily basis." Pl.'s Trial Ex. 342. This is more than some evidence that Bartlett knowingly participated in, and provided substantial assistance to, Cohen's breach of fiduciary duty.

Separate Defendant's also argue that Plaintiff failed to establish that Bartlett's actions proximately caused damage to LSI. Separate Defendants raised many of the same arguments for

Bartlett as they did for Appel, claiming there was insufficient evidence for the jury to find that Bartlett's actions resulted in $2.5 million in damages to LSI. The Court therefore incorporates here its reasoning on causation in Section III(A)(2) and holds that there is sufficient evidence to show causation with respect to Bartlett. Further, there is evidence that FEQ Realty, a company owned and controlled by Bartlett, generated a net profit of $2.3 million. Trial Tr. (Manz testimony) 37–38, ECF No. 288. This, along with the evidence described in Section III(A)(2) above, is more than sufficient to support a jury finding that Bartlett's actions proximately caused damage to LSI in the amount of $2.5 million.

Accordingly, the Court **DENIES** Separate Defendant's Rule 50 motion as to Bartlett.

### B.      Separate Defendants' Rule 59 Motion

The Fifth Circuit has held that a new trial is appropriate where: (1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error. *Seidman*, 923 F.2d at 1140. "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio*, 589 F.2d at 179 n.3. Separate Defendants argue that Plaintiff's counsel made remarks about expert testimony in his closing statement that were highly prejudicial. Defendants' counsel objected at the time and was overruled.[9] The Court does not believe the statement made

---

[9] The comment that Separate Defendants argue is prejudicial reads in the transcript as follows:

> **Mr. Cullens:** Thank you, Your Honor. Eight minutes? . . . I will suggest to you what Mr. Shemin knows, but I will make it clear. It would be improper for any experts – You remember we went through all the experts. You can't state your personal opinion; that's for the jury.
>
> **Mr. Shemin:** Objection, Your Honor. I hate to object. That's just not an accurate statement of law.
>
> **Mr. Cullens:** Your Honor, Federal Rules of Evidence clearly –
>
> **The Court:** Hold on. Hold on. I overrule the objection. Go ahead.

*See* Min. Entry 19:17–20:9, ECF No. 293.

by Plaintiff's counsel caused manifest injustice to the movants, and Separate Defendants have failed to provide evidence of harmful error. The Court therefore **DENIES** Separate Defendants' motion for new trial**.**

### C.    DeJoria's Rule 50 Motion

The jury found DeJoria breached his fiduciary duty and aided and abetted Cohen's breach of fiduciary duty. Jury Charge 6–7, ECF No. 287. The jury assessed damages against DeJoria totaling $1.5 million as to Damage Element 1 and $1 million in exemplary damages. *Id.* at 8, 10. DeJoria filed his motion for judgment as a matter of law under Rule 50, or in the alternative, motion to alter or amend the judgment, and motion for new trial under Rule 59 on August 7, 2017. DeJoria Mot. JMOL, ECF No. 296. DeJoria generally argues that the evidence presented at trial was insufficient to support the jury verdict.

To prove DeJoria breached his fiduciary duty to LSI, Plaintiff was required to establish (1) a fiduciary relationship; (2) a breach by DeJoria; and (3) that DeJoria's breach resulted in injury to Plaintiff or benefit to DeJoria. *Navigant Consulting*, 508 F.3d at 283. The first element is undisputed here—DeJoria as a director of LSI owed the company a fiduciary duty from the time he became a director on October 21, 2011, until September 14, 2012. Jury Charge 5, ECF No. 287.

As to the second element, Plaintiff did not argue at trial that DeJoria's direct actions resulted in a breach of his fiduciary duty. Rather, Plaintiff presented a theory that DeJoria's decision to refrain from acting in accordance with his legal duties constituted a breach. Plaintiff argued that DeJoria knew that the Jabil contract was harmful to the company, that Appel and Bartlett's influence hurt LSI, and that DeJoria chose to do nothing while the company floundered. Specifically, Plaintiff argued that upon becoming a director of LSI in October 2011, DeJoria had a duty to "immediately take the necessary steps to terminate the Jabil contract and mitigate the

damage to LSI" and prevent Appel and Bartlett from exercising control over LSI. Pl.'s Resp. 15, ECF No. 308.

The Supreme Court recognized in *Briggs* that directors and officers of a corporation are liable for losses their company incurs due to their neglect of duty. *Briggs v. Spaulding*, 141 U.S. 132, 146 (1891); *see also* 3A FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, 1082 (1986 rev. ed.) ("[D]irectors . . . liable for the losses caused by their neglect of duty although such losses resulted after they had ceased to be directors . . . ."). Plaintiff presented evidence at trial that DeJoria knew of: (1) LSI's insolvency before LSI entered into the Jabil contract, saddling the company with millions of dollars of debt; and (2) the shady and damaging actions taken by Appel and Bartlett. The Court is unpersuaded that the evidence of DeJoria's knowledge of LSI's insolvency before LSI committed to the Jabil contract sufficiently supports a finding that DeJoria is liable for the damages resulting from the Jabil contract. Plaintiff has not shown that DeJoria should be liable for damages incurred by action that predates his time as an LSI director. Nor has Plaintiff pointed to evidence in the record that would support a conclusion that he breached his fiduciary duty related to the Jabil contract while he was a director. *Cf. Navigant Consulting,* 508 F.3d at 283 (requiring the existence of a fiduciary relationship to find a breach of fiduciary duty).

The Court does find, however, that there is sufficient evidence to support Plaintiff's alternative theory of DeJoria's breach—namely, DeJoria's awareness of, and failure to shield LSI from, the bad acts of Cohen, Appel, and Bartlett. Plaintiff presented evidence that indicates DeJoria knew of Appel and Bartlett's self-dealing and chose to move slowly rather than attempt to cancel their consulting agreements or halt their participation in LSI affairs. Pl.'s App. 18–20, ECF No. 307-1 (Mar. 2, 2012 letter from Gustin, Wohler, and Link to DeJoria); Pl.'s Trial Ex. 318 (Aug. 17, 2012 Wohler e-mail) ("[DeJoria] has thwarted us on every single occasion. To the point where

he refused to acknowledge board minutes mentioning wrongdoing of the Appel group."). There is also evidence that Appel and Bartlett persuaded DeJoria not to allow CEO Wohler to fire Cohen after LSI associates became aware of Cohen's harmful actions. Pl.'s Trial Ex. 318 (Aug. 17, 2012 Wohler e-mail) ("I tried to fire [ ] Cohen for numerous documented reasons with [DeJoria]'s authority and then [Appel], [Bartlett] would call him and he would force me to rescind the firing"). With this evidence, the jury could reasonably infer that DeJoria's actions and inaction related to relieving Cohen of his duties constituted a breach of his duty to LSI.

The third element requires Plaintiff to provide evidence that proves DeJoria benefitted from his breach, or that his breach caused damage to LSI. It is clear that DeJoria did not benefit from his dealings with LSI; in fact he lost a substantial amount of money. *See* DeJoria Mot. JMOL 5, ECF No. 296 (containing a chart showing DeJoria's investments in LSI in 2011 and 2012). Plaintiff presented evidence of a report addressed on February 9, 2012, to Gustin and DeJoria (also received by CEO Wohler) summarizing documentation related to LSI stock sales by Appel. Pl.'s Trial Ex. 333 (Lugo Report) ("I have found numerous documents whereby shares are being purchased at $1.00 per share by [ ] Appel and or persons or corporations he may control and then sold into the open market at then current price [sic] with a spread of 2 to 3 points of immediate profits generated."). LSI hired the author of the report, Jose Antonio Lugo ("Lugo"), to look into suspicions of market manipulation. July 13, 2017 Trial Tr. 113:17–23 (Appel Cross). Lugo opined that under a securities regulation known as Rule 16B, which regulates insider trading, Appel should have paid back the profits he made to LSI. *See* Pl.'s Trial Ex. 333. Months later, in May 2012, Lugo alerted LSI associates that he believed Appel would be considered an undisclosed investor by the SEC and "[e]ach and every share that [ ] Appel has purchased and sold can be considered by the SEC as RESTRICTED SHARES SALES. [Appel] is an insider and this will be

a major problem for [LSI]." Pl.'s Trial Ex. 452 (Lugo e-mail) (emphasis in original). This constitutes sufficient evidence that DeJoria consciously disregarded the activities of Cohen, Bartlett, and Appel. Moreover, from the evidence presented that Appel was profiting from LSI stock through insider trading, the jury could reasonably infer that absent DeJoria's protection of Cohen and Appel, the damages incurred by the undisclosed sale of LSI stock would not have occurred. Therefore, the jury could reasonably infer that DeJoria's acts proximately caused damages to LSI. Accordingly, the Court finds that sufficient evidence exists as to all three elements to support a finding that DeJoria breached his fiduciary duty to LSI.

The jury found DeJoria liable for $1.5 million in liabilities incurred by LSI because of his breach of fiduciary duty. Jury Charge 8, ECF No. 287. The Court must determine whether there is sufficient evidence in the record to support the damage award. First, Manz testified that his extensive investigation into LSI's financials informed his opinion that certain defendants, including Appel and Bartlett, profited $5.1 million from the sale of LSI stock. Trial Tr. (Manz testimony) 32–34, ECF No. 288. This evidence alone is not sufficient; the profit must have occurred during DeJoria's tenure. While DeJoria was a director—from October 21, 2011 and through February 7, 2012—Appel himself provided a record, in the form of an e-mail, of the "Bartlett/Appel group" buying well over 2 million shares and selling them into the market. *See* Pl.'s Trial Ex. 124. At the minimum price of $1 per share (as described in Appel's e-mail), the jury could reasonably infer that Appel and Bartlett profited at least $2 million during DeJoria's tenure. This is more than some evidence to support a jury finding that DeJoria's breach caused $1.5 million in damages to LSI. It was within the jury's discretion to award below the amount shown by the evidence based on their credibility determinations.

Next, DeJoria also argues there is insufficient evidence that he aided and abetted Cohen's

breach of fiduciary duty. DeJoria Mot. JMOL 6–7, ECF No. 296. To prove this claim at trial, Plaintiff was required to establish: (1) the existence of a fiduciary relationship between Cohen and LSI; (2) that DeJoria knew of that fiduciary relationship; and (3) that DeJoria was aware that he was participating in Cohen's breach of that fiduciary relationship. *Meadows*, 492 F.3d at 639. The first element here is undisputed—the parties agree that Cohen was an officer and director of LSI and Cohen owed LSI a fiduciary duty. Jury Charge 5, 7, ECF No. 287. Second, Plaintiff offered evidence that DeJoria knew that Cohen was an officer and director of LSI—DeJoria was a longtime investor in LSI and it is therefore reasonable to infer that as an investor, he knew of LSI's officers and directors through LSI's public disclosure documents and other means. *See* Pl.'s Trial Ex. 143.

Lastly, Plaintiff argues that by allowing Cohen, Appel, and Bartlett to maintain control over LSI even after he knew of their wrongdoing, DeJoria knowingly participated in, and provided substantial assistance to, Cohen's breach of fiduciary duty. Pl.'s Resp. 9–13, ECF No. 308. There is more than some evidence in the record—detailed throughout this order—that DeJoria was fully aware of that Cohen was mishandling LSI's affairs. *See, e.g.*, Defs.' Ex. 421 at 58–65, ECF No. 276; Pl.'s App. 16, 18–20, 65–66, ECF No. 307-1. The evidence cited above shows that Wohler and other LSI associates frequently informed DeJoria of the day-to-day operations of the company and warned him of Cohen's dealings with Appel and Bartlett. There is also evidence that Bartlett persuaded DeJoria not to allow CEO Wohler to fire Cohen after LSI associates became aware of Cohen's harmful actions. Pl.'s Trial Ex. 318. This evidence supports the theory Plaintiff argued at trial—that DeJoria knowingly participated in Cohen's breach by allowing Cohen to continue his wrongful actions, namely giving Appel and Bartlett significant control over LSI's affairs, and these actions caused harm to LSI. The Court finds that the evidence is sufficient to support a finding that DeJoria aided and abetted Cohen's breach of fiduciary duty and DeJoria is therefore jointly and

severally liable for the damages assessed by Cohen's breach of fiduciary duty.

The jury also awarded $1 million in exemplary damages against DeJoria. Jury Charge 9–10, ECF No. 287; *see also* TEX. CIV. PRAC. & REM. CODE § 41.003 (requirements for award of exemplary damages). The Court finds this award, based on the evidence presented above of DeJoria's conduct, is appropriate and reasonable in relation to the actual damages awarded. *See Roth v. Mims*, 298 B.R. 272, 297–98 (N.D. Tex. 2003).

For the reasons stated above, DeJoria's Rule 50 motion is **DENIED** in its entirety.

### D.      DeJoria's Rule 59 Motion

DeJoria formulaically concludes his Rule 50 motion with a request that the Court grant a new trial in this matter, but provides no argument or evidence of prejudicial error or manifest injustice of the jury verdict. DeJoria Mot. JMOL 19–20, ECF No. 296. As stated above, the Fifth Circuit has found that a new trial is appropriate where: (1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error. *Seidman*, 923 F.2d at 1140. "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio*, 589 F.2d at 179 n.3. The Court finds that DeJoria has failed to meet his burden of showing why the Court must grant a new trial and therefore DeJoria's motion is **DENIED.**

### E.      Plaintiff's Rule 58 Amended Motion For Judgment

The general rule, applicable here and in most cases, which has been recognized repeatedly by the Texas Supreme Court holds that: "The jury generally has discretion to award damages within the range of evidence presented at trial." *Sw. Energy Prod. Co.*, 491 S.W.3d at 713; *see also, e.g., Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Helena Chem. Co. v.*

*Wilkins*, 47 S.W.3d 486, 506 (Tex. 2001) (holding that evidence was sufficient to support jury's damage award where jury's damages finding was "within the range of evidence the [plaintiff] presented"). The damage awards here were not excessive but were within the range of damages presented by Plaintiff at trial.

Texas law also states that if a third party knowingly participates in a defendant's breach of fiduciary duty owed to a plaintiff, the third party is jointly liable with the defendant for damages to the plaintiff proximately caused by this breach of fiduciary duty, and the plaintiff has the same equitable remedies against the defendant and the third party based upon this breach. *Kline v. O'Quinn*, 874 S.W.2d 776, 786–87 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Kinzbach v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 512–14 (1942). Therefore, based on the jury findings and Texas law, the Court finds that Appel, Bartlett, and DeJoria are jointly and severally liable for the $6.9 million in compensatory damages awarded against Cohen. Defendants Appel, Bartlett, and DeJoria are also personally liable for the damages assessed against them for aiding and abetting Cohen's breach and exemplary damages. Cohen is also personally liable for the exemplary damages assessed against him.

Plaintiff's amended motion for judgment is therefore **GRANTED**.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that Separate Defendants' Motion to Alter Judgment as a Matter of Law (ECF No. 294) should be and is hereby **DENIED**; Defendant John Paul DeJoria's Motion for Judgment as a Matter of Law (ECF No. 296) should be and is hereby **DENIED**; and Plaintiff's Amended Motion for Judgment (ECF No. 297) should be and is hereby **GRANTED.** In light of this decision, the parties are to file a joint status report no later than January 29, 2018, setting forth what else needs to be accomplished to conclude this matter.

**SO ORDERED** on this **22nd day** of **January, 2018.**


_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE